```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION
```

RICHARD FRANKLIN                §
                                §
VS.                             §   CIVIL ACTION NO. 4:10-CV-618-Y
                                §
BURLINGTON NORTHERN & SANTA FE  §
RAILROAD COMPANY, et al.        §

<u>ORDER GRANTING MOTION TO DISMISS</u>

Before the Court is the Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2) (doc. 4) filed by defendant Berkshire Hathaway, Inc. ("Berkshire Hathaway"). In the motion, Berkshire Hathaway asks the Court to dismiss plaintiff Richard Franklin's claims for lack of personal jurisdiction. After review, the Court concludes that it cannot exercise personal jurisdiction over Berkshire Hathaway because Berkshire Hathaway does not have the requisite minimum contacts with the state of Texas. Accordingly, the Court will grant the motion.

I. Background

Litigation in this dispute began in December 1997 when Franklin filed suit[1] against Burlington Northern & Santa Fe Railway Company ("BNSF Railway") for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Out of that action the parties reached a settlement agreement ("the agreement"), the terms of which Franklin disputes in the instant

---

[1] *See Franklin v. Burlington N. & Santa Fe Ry. Co.*, No. 4:03-CV-228-BE, 2005 WL 517913, at *1 (N.D. Tex. Mar. 3, 2005).

action. (Compl. 5a.)[2] The agreement called for Franklin to resign from his job as a train dispatcher and "to release all claims" claims against BNSF Railway in exchange for $150,000. (*Id.*) Franklin subsequently resigned and received payment from BNSF Railway pursuant to the terms of the agreement. (Compl. ¶ 5a.) Sometime thereafter Franklin began reapplying for a dispatcher position with BNSF Railway. (*Id.* ¶ 5b.) After BNSF Railway refused to process Franklin's applications, Franklin filed the instant suit seeking a declaratory judgment that the agreement did not specify permanent resignation and that BNSF and the other defendants retaliated against him for attempting to enforce his rights in court.[3] (*Id.*)

After the instant suit was filed, Berkshire Hathaway filed a motion to dismiss for lack of personal jurisdiction. Berkshire Hathaway is a foreign defendant that has its principal place of business in Omaha, Nebraska. (*Id.* ¶ 3.) It is a holding company that owns stock in numerous corporations that are engaged in a variety of business activities. (Krutter Decl. ¶ 4.) Burlington Northern & Santa Fe, LLC ("BNSF") is a wholly-owned subsidiary of Berkshire Hathaway, and BNSF Railway is a subsidiary of BNSF. (*Id.* ¶ 9.) Franklin's complaint is primarily directed toward the

---

[2] The complaint contains two paragraphs marked by the heading "V." This opinion will refer to the first as "5a" and the second as "5b."

[3] Franklin filed four separate suits in 1997, 1999, 2003, and 2010, respectively, against Burlington Northern. The first suit resulted in the settlement agreement; the second and third suits were dismissed; and the fourth suit is currently before the Court. *See Franklin*, 2005 WL 517913 at *1-2.

actions of BNSF Railway, as it is the company that refused to consider his application. (Compl. ¶ 5b.)

II. Legal Standards

    A. Rule 12(b)(2)

Dismissal under Rule 12(b)(2) is appropriate when a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction and, when a district court rules on the motion without an evidentiary hearing, the plaintiff carries his burden merely by making a prima-facie showing.[4] *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). In a diversity case, the district court may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the due-process protections afforded by the United States Constitution. *Clemens*, 615 F.3d at 378. Texas's long-arm statute reaches to the limits of the Constitution. *Id*. Therefore the only issue that a federal district court in Texas must resolve is whether exercising personal jurisdiction over the defendant offends due process. *Id.*; *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413-14 (1984).

---

[4] "The district court may consider affidavits and other properly obtained evidentiary material when making its determination, but shall accept uncontroverted allegations in the complaint as true and shall resolve all factual conflicts in favor of plaintiffs." *Bryant v. Salvi*, 141 F.App'x 279, 281 (5th Cir. 2005).

3

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and when the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Clemens*, 615 F.3d at 378. Minimum contacts may give rise to personal jurisdiction in one of two ways: specific jurisdiction or general jurisdiction. *Id.* The inquiry is fact intensive, and no one factor is decisive. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The key is whether the defendant's conduct is such that it would cause the defendant to reasonably anticipate "being haled into court." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Specific jurisdiction exists when the defendant has "purposefully directed" his activities at residents of the forum state and when the alleged injuries arise out of those particular activities. *McFadin*, 587 F.3d at 759 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). This requirement protects a defendant from being haled into court in a foreign jurisdiction solely because of random, fortuitous, or attenuated contacts with the forum state. *Burger King*, 471 U.S. at 472. It also ensures that there is a sufficient nexus between the non-resident defendant's activities with the forum state

and the cause of action.  *Helicopteros*, 466 U.S. at 414 n.8.

A federal district court may exercise general jurisdiction over a non-resident defendant when the defendant's contacts with the forum state are "substantial, continuous, and systematic." *Johnston v. Multidata Syss. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros*, 466 U.S. at 414-19). The "continuous and systematic" test can be difficult for a plaintiff to meet as it requires "extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609. Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction. *Id.*

When determining whether a defendant's conduct is sufficiently "continuous and systematic" to support general jurisdiction, a court must not review the contacts in isolation from one another, but rather *in toto*, taking into account all of the defendant's activities in the forum state. *Id.* Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction. *Id.* The Fifth Circuit has gone so far as to require a "defendant [to] have a business presence *in* Texas, and not just [to] do business *with* Texas." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-18 (5th Cir. 2009) (concluding that general jurisdiction did not exist despite the defendant's deriving millions of dollars each month from Texas residents); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (concluding that no general jurisdiction

was present despite the defendant's earning over twelve percent of its total revenues from sales in the forum state).

When a court lacks authority to exercise specific or general jurisdiction over a foreign defendant, the plaintiff may, in some cases, establish jurisdiction on a theory of alter ego. *See Jackson v. Tanfoglio*, No. 09-30870, 2010 WL 3294415, at *5 (5th Cir. Aug. 23, 2010). To do this, the plaintiff must show that the court has jurisdiction over one entity, and then he must show that the foreign corporation is its alter ego. *Dalton*, 897 F.2d at 1363. If the court has jurisdiction over one entity, then it may exercise jurisdiction over its alter egos. *Id.*

"Generally, [however,] a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Nevertheless, it is possible that a close relationship between a parent company and its subsidiaries may give rise to a claim of jurisdiction through alter ego theory. *Dalton*, 897 F.2d at 1363. A court may exercise personal jurisdiction over a parent corporation that "does business" in a jurisdiction through the local activities of its subsidiaries if it finds that the parent corporation "exerts such domination and control over its subsidiary 'that they do not in reality constitute

separate and distinct corporate entities . . . .'" *Hargrave*, 710 F.2d at 1159. But to overcome the presumption of institutional independence between related companies, the plaintiff must prove "domination and control" by "clear evidence." *Freudensprung v. Offshore Technical Servs.*, 379 F.3d 327, 346 (5th Cir. 2004).

While courts have had difficulty articulating the degree of control necessary to ascribe the activities of a subsidiary to the parent company, *Hargrave*, 710 F.2d at 1159, the Supreme Court has addressed the problem to provide some guidance for courts in determining when it is appropriate to disregard the corporate form. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) (affirming the district court's dismissal for lack of personal jurisdiction where the corporations observed the corporate formalities). Essentially, "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Hargrave*, 710 F.2d at 1160. One hundred percent stock ownership and commonality of officers and directors are not enough, by themselves, to establish an alter-ego relationship between two corporations. *Id.* There must be proof of control of the parent over the subsidiary greater than that normally associated with common ownership and directorship. *Id.* In making its determination as to whether there are actually two distinct corporate entities, the Court should

consider all relevant facts and circumstances.[5] *Id.* In the absence of alleged facts or evidence demonstrating sufficient control of the parent over the subsidiary, the plaintiff does not overcome the presumption of corporate separateness. *See Fruedensprung*, 379 F.3d at 346-47. In such a case, due to a lack of minimum contacts, the district court has no personal jurisdiction over the parent company. *See id.*

III. Analysis

In his complaint, Franklin refers to Berkshire Hathaway as the "parent of the Defendants [sic] Burlington Northern entities named above . . . ." (Compl. ¶ 3.) Franklin lumps all three defendants together throughout the rest of the complaint, refers to them collectively as "Defendants," and alleges that "Defendants" unlawfully denied him the opportunity to reapply for employment. (*Id.; see* ¶¶ 5a-6.) But aside from lumping Berkshire Hathaway in by way of generic references to the defendants' actions, Franklin has not alleged any facts that specifically link Berkshire Hathaway to Texas. As the Court will explain, given Berkshire Hathaway's status as a separate corporate entity from the other defendants, Franklin's generalized

---

[5]Courts have considered several factors in making their determinations as to whether the plaintiff has overcome the presumption of corporate separateness, including "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Fruedensprung*, 379 F.3d at 346.

9

allegations are not sufficient to show, prima facie, that Berkshire Hathaway has the requisite minimum contacts with Texas to support personal jurisdiction. (Compl. ¶ 3); *see Clemens*, 615 F.3d at 378. Moreover, because Berkshire Hathaway does not have minimum contacts with Texas, the Court need not engage in the "traditional notions of fair play and substantial justice" analysis.

First, the Court cannot exercise specific jurisdiction over Berkshire Hathaway because its contacts with Texas are too attenuated. Franklin's allegations stem from a dispute over the terms of a settlement agreement from a previous lawsuit. Neither the previous lawsuit nor the settlement agreement involve the activities of Berkshire Hathaway. Specific jurisdiction requires some act by which Berkshire Hathaway purposefully availed itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of its law. *See Clemens*, 615 F.3d at 378 (quoting *Hanson*, 357 U.S. at 253). Franklin has not alleged any facts relating to Berkshire Hathaway's acts within Texas. Further, he has not alleged any facts indicating that Berkshire Hathaway purposefully directed its activities at the residents of Texas or that Franklin's alleged injuries came as a result of those activities. *See Gerber*, 587 F.3d at 759 (quoting *Burger King*, 471 U.S. at 472). It cannot be inferred from Berkshire Hathaway's ownership of BNSF stock that Berkshire Hathaway personally availed itself of the benefits and laws of Texas. *See Hanson*, 357 U.S. at 253. Nor is it reasonable for Berkshire

Hathaway to assume that it might be haled into court in Texas simply because Berkshire Hathaway owns stock in that corporation. *See World-Wide Volkswagen Corp.*, 444 U.S. at 298. In short, the nexus between Berkshire Hathaway's ownership of its subsidiary's stock and its alleged violations of the Civil Rights Act is not sufficient to establish, even prima facie, specific personal jurisdiction. *See Helicopteros*, 466 U.S. at 414. n.8; *Hargrave*, 710 F.2d at 1160.

Second, the Court does not have general jurisdiction over Berkshire Hathaway because Berkshire Hathaway's actions fall well short of the "substantial, continuous, and systematic" standard. *Johnston*, 523 F.3d at 609. While it could possibly be argued that Berkshire Hathaway's ownership of its subsidiaries is continuous, this factor alone falls short of the difficult standard required for general jurisdiction. *See id.* Franklin's reference to Berkshire Hathaway as the "parent" of the other defendants fits the description of an "overgeneralized assertion" because, standing on its own, it does not articulate how Berkshire Hathaway's role as a parent company is related to doing business *in* Texas. *See id.* at 610; *Access Telecom*, 197 F.3d at 717. Franklin has alleged no facts indicating that Berkshire Hathaway has a "business presence *in* Texas." *See id.* If anything, the facts indicate the contrary, as Berkshire Hathaway's primary place of business is in Omaha, Nebraska. (Krutter Decl. ¶ 3; Compl. ¶ 3.) Berkshire Hathaway does not have any offices, agents, or employees in Texas, nor is it registered to do business there.

(Krutter Decl. ¶¶ 5-6.) In light of these facts, the Court concludes that Berkshire Hathaway's contacts with Texas are neither substantial nor systematic and, therefore, not sufficient to establish general jurisdiction. *See Johnston*, 523 F.3d at 609.

Finally, Franklin has failed to make a prima-facie showing by "clear evidence" that Berkshire Hathaway is the alter ego of either BNSF or BNSF Railway. *See Freudensprung*, 379 F.3d at 346. Franklin has alleged no facts to support the assertion that Berkshire Hathaway has exerted the "domination" or "control" necessary to overcome the presumption of corporate separateness. *See Hargrave*, 710 F.2d at 1159. Franklin has alleged none of the common indicators of domination or control, such as Berkshire Hathaway's sharing bank accounts, bookkeeping, payroll, or insurance systems with BNSF or BNSF Railway. *Id.* at 1160. Nor has Franklin alleged that Berkshire Hathaway exercised authority over the day-to-day policies of its subsidiaries. *Id.* The only fact Franklin has alleged that could fairly be construed to support a claim of alter ego is that Berkshire Hathaway held stock in the other defendant companies. (Krutter Decl. ¶ 9.) But this fact alone is not enough to support a finding that Berkshire Hathaway was the alter ego of BNSF or BNSF Railway. *See Hargrave* at 1160.

By all indications, the companies are truly separate entities. Berkshire Hathaway maintains separate boards of directors and has separate employees, assets, and principal places of business from

12

the other defendants, (Krutter Decl. ¶ 10), and there are no indications that Berkshire Hathaway exercised more than the normal amount of control over the daily activities and policies of its subsidiaries. *See Fruedensprung*, 379 F.3d at 346; *Hargrave*, 710 F.2d at 1160. Because stock ownership alone is not enough to establish alter ego, Franklin has not overcome the presumption of corporate separateness. *See Hargrave*, 710 F.2d at 1160. Accordingly, this Court may not exercise personal jurisdiction over Berkshire Hathaway on a theory of alter ego.

IV. Conclusion

Applying all relevant authority to the facts alleged by Franklin and the uncontroverted facts asserted by Berkshire Hathaway, the Court concludes that it cannot exercise personal jurisdiction over defendant Berkshire Hathaway by way of specific jurisdiction, general jurisdiction, or an alter-ego theory. Accordingly, Defendant's 12(b)(2) motion to dismiss is GRANTED. All claims in the above-styled and -numbered cause against defendant Berkshire Hathaway, Inc., are hereby DISMISSED WITHOUT PREJUDICE.

SIGNED December 1, 2010.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE